[No. 25788.   *En Banc.*   March .6, 1936.]

FRANK SCHATTER, *as Guardian ad Litem for Wayne Schatter, a Minor, Appellant,* v. FERDINAND N. BERGEN *et al., Respondents.*[1]

[1]Reported in 55 P. (2d) 344.

*Rex S. Roudebush,* for appellant.
*Hayden, Metzger & Blair,* for respondents.

TOLMAN, J.—This is an action by a minor, six years of age, appearing by his father as guardian *ad litem,* to recover for personal injuries sustained by reason of the alleged negligence of the defendants. The action was tried to the court sitting without a jury. At the close of the plaintiff's case a motion for nonsuit was interposed and sustained. Judgment of dismissal followed, from which the plaintiff has appealed.

Appellant's complaint pleads an ordinance of the city of Tacoma relating to the use of air guns, air rifles and sling shots within the limits of the city of Tacoma, sections one and two of which read:

"SECTION I: AIR GUNS AND SLING SHOTS—It shall be unlawful for any person to carry or to shoot or discharge any air gun, air rifle or sling shot in the City of Tacoma.

"SECTION II: PARENTS PERMITTING USE—It shall be unlawful for the parent or guardian of any child under the age of eighteen years to knowingly permit such child to carry any air gun, air rifle or sling shot in said City."

With the provisions of this ordinance as a basis, the complaint alleges that the respondents Bergen, in violation of the ordinance and shortly prior to July 2, 1934, purchased an air gun, together with the necessary BB lead shots required in shooting such a gun, for the use of their six-year-old son and furnished the same to the minor son and permitted him and the other children in the neighborhood to use it in their play, and that the son and his playmates did so use the air gun and its ammunition with the knowledge and consent of the respondents; that on July 2, 1934, the minor Wayne Schatter joined with the other children of the neighborhood in play, and that, in their

play, the air gun provided by the respondents was being used by the respondents' son and by the other children in the group assembled; that, while the minor Wayne Schatter was so playing with the group of children, the air gun was discharged, and the shot so discharged struck the minor Wayne Schatter in the right eye, producing permanent loss of the sight of such right eye.

Answering the complaint, the respondent admitted the violation of the city ordinance by them in these words:

"Answering paragraph III, these defendants admit that prior to July 2, 1934, they purchased an air gun for their son, Ferdinand N. Bergen, Jr., and furnished some BB shots to use in shooting said gun at a target set up in defendants' yard, but deny each and every other allegation in said paragraph III of the plaintiff's complaint contained."

They also admit that the injured minor resided in the same neighborhood with them and admit that, on July 2, 1934, he sustained some injury to his right eye. Otherwise, the allegations of the complaint seem to be denied specifically or generally.

The evidence very clearly establishes that the houses in which the appellants and the respondents respectively lived at the time of the accident were in a block facing "G" street, in the city of Tacoma, in close proximity one to the other. The yards surrounding these residences were unfenced, and it appears rather clearly that the injured minor, the minor son of respondents, and the other children of the neighborhood played together in and about the yards of the various residences in the neighborhood.

A lady, who lived in an apartment opposite the respondents' home for two years preceding the accident, testified that, for some time prior to the day of the

accident, she had observed children of the neighborhood playing in the yards of the houses on the opposite side of the street; sometimes there would be five or six and sometimes only two or three children present. She observed the children playing various games in which they used an air gun, which they would shoot at one another and the children shot at would drop and play dead. She could hear the report of the air gun, saw the children aim it at each other, and never saw more than one air gun. She knew the Bergen boy, she had seen him with the gun and likewise had seen all of the children thus engaged in play using the gun. She saw the injured minor playing at the game with the other children. She was unable to describe the gun and saw nothing which occurred on the day of the accident.

Another lady testified that she lived in one of the houses in the block where the appellant and respondents lived; that, on the afternoon of the day of the accident, the boy's mother, Mrs. Schatter, had gone down town after requesting her to take care of Wayne. She offered to take care of him, as did Mrs. Taylor, also living in the neighborhood. Just before the accident, she went out on her front porch and inquired of Mrs. Taylor where Wayne was. Mrs. Taylor said she had not seen him. She sat on the front porch for a few minutes, when she heard a report, like a shot, and a scream, and looked and saw Wayne down on his knees. On going to him, she found another boy, Dickey Walsh, with an air gun in his hand. She saw no other boy at the time. The parents of Wayne were called, and as they were leaving to take the boy to the hospital, the respondent Mrs. Ferdinand N. Bergen appeared. Asked to relate what conversation took place with Mrs. Bergen, she answered:

"We got to talking, Mrs. Bergen and Mrs. Anderson, and I said, Who does this gun belong to, and Mrs. Bergen said it belonged to her little son, and I said the boy that shot him said he did not know the gun was loaded. Mrs. Bergen said he did too because they had been firing shots all morning."

The Mrs. Taylor referred to testified that, after she heard the report of the gun and heard Wayne's scream, she ran to him and saw a group of children, Wayne, Dickey Walsh and Junior Bergen, son of respondents, and possibly some others. Dickey Walsh was holding the air gun. She testified that the respondent Mrs. Ferdinand Bergen appeared on the scene, and

"Q. Then what happened, and do you recall any conversation? A. I remember Mrs. Seiler said that Dicky Walsh said he didn't know the gun was loaded, and Mrs. Bergen said he did too know it was loaded; that they had been shooting shots all day, and it was late in the afternoon then;"

but that she heard no statement by Mrs. Bergen as to the ownership of the gun, such as was testified to by the witness we have before referred to.

In the course of an oral opinion delivered when ruling upon the respondents' motion to dismiss, the trial court expressed the opinion that the ordinance of the city of Tacoma was not material in the case, because it had not been proven that the respondents had given permission to their son for the use of the air gun in the afternoon of the day of the accident. The court also found that there was no evidence, other than by inference, that the gun used belonged to the child at all. The court indicated his opinion that the air gun itself was not a dangerous instrumentality, but a toy, and that the parents would not necessarily be liable in damages for accidents resulting from its use by their minor son.

■ We are not in agreement with the trial court in its view of the force of the ordinance. Plainly, it outlaws the carrying or use of an air gun in the city of Tacoma and makes it unlawful for the parent to permit his child under eighteen years of age to carry such gun. Any parent violating the provisions of this ordinance by giving his minor child an air gun for use within the city would be subject to civil liability for any injury resulting as a natural and probable sequence of the violation of the ordinance.

Respondents do not question in any way their violation of the city ordinance and expressly admit the placing of a dangerous and outlawed instrumentality in the hands of a child six years of age, nor do they plead any supervision over the child's use of the dangerous instrument. Apparently, respondents concede the tort but deny that the proof is sufficient to show that their tort was the proximate cause of the injury.

The theory of appellant's case is well expressed in *Akin v. Bradley Engineering & Machinery Co.*, 48 Wash. 97, 92 Pac. 903, 14 L. R. A. (N. S.) 586, where it is said:

"It is fundamental, of course, that one cannot recover for injuries against another whose act or omission was not, or did not contribute to, the proximate cause of such injury. But it is equally true that where a negligent act or omission sets in operation a train of occurrences resulting naturally in the injury complained of, such negligent act or omission is deemed to have been the proximate cause, or to have contributed thereto."

Again, this court has said:

"This is not a case of negligent *handling* of a gun, but rather one of the negligent *placing* of a gun. Persons who leave highly dangerous instrumentalities where young children may come in contact with them, and where mischief may result, should answer in damages for the mischief, if their want of care is the proxi-

mate cause of the wrong or damage done." *Smith v. Nealey,* 162 Wash. 160, 298 Pac. 345.

See, also, *Olson v. Gill Home Inv. Co.,* 58 Wash. 151, 108 Pac. 140, 27 L. R. A. (N. S.) 884; *Collais v. Buck & Bowers Oil Co.,* 175 Wash. 263, 27 P. (2d) 118; *Charlton v. Jackson,* 183 Mo. App. 613, 167 S. W. 670, and *Sutton v. Champagne,* 141 La. 469, 75 So. 209.

We have often held that the violation of an ordinance is negligence *per se,* and it seems clear that the only question here involved is whether or not the injury was the natural result of the admitted negligent act.

It seems to us that the appellant made a rather strong and convincing case upon all material points. As before indicated, a tort was admitted, and proof was necessary only to show that, by natural sequence, the injury followed from the tort. Of course, we have only the plaintiff's case before us. Had the defendants been put to their proof, the plaintiff's evidence might have been materially affected. Had the trial been to a jury, under all authority no nonsuit could have been granted; but this was a case tried to the court, and a different rule obtains. *Lambuth v. Stetson & Post Mill Co.,* 14 Wash. 187, 44 Pac. 148; *Jim v. Chicago, Milwaukee & St. Paul R. Co.,* 93 Wash. 179, 160 Pac. 295; *Kalivas v. Northern Pacific R. Co.,* 96 Wash. 309, 165 Pac. 96.

We must, therefore, before we can reverse the judgment, find that the evidence preponderates against the trial court's findings. A brief restatement we think, will justify us in so holding: (1) The admission of the wrongful act of placing an outlawed instrument in the hands of an infant of tender years; (2) uncontradicted and apparently credible evidence that the children of the neighborhood, including the minor sons of the parties hereto, habitually played

with an air gun from the time respondents admittedly purchased an air gun for their son; (3) but one air gun was shown to exist in the neighborhood or to be in possession of the children; and (4) the admission against interest by Mrs. Bergen.

We have not overlooked the cases of *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22, and *Commercial Importing Co. v. Wear,* 180 Wash. 669, 41 P. (2d) 777, and other like cases cited by respondents, but we see nothing in any of those cases which warrants a disregard at this time of the admission against interest testified to in this case, because that admission was corroborated by and in harmony with all of the other facts proven in the case, and was such a statement as would likely be made by any honest person under the circumstances if the facts contained therein were true. It was not of that improbable type, out of harmony with all known facts, which would justify a disregard of it upon a motion for nonsuit.

We are satisfied that the facts testified to, and the reasonable inferences necessarily to be drawn therefrom, were sufficient, lacking anything to the contrary, to establish permission by the respondents to their minor son to use the air gun at the time of the accident, and that the gun used was the gun purchased by respondents for the use of their child.

We, of course, do not prejudge the force to be given to this evidence after it may have been met by opposing testimony. We hold only that, standing unquestioned, it would have warranted the entry of findings which would have permitted a recovery to the appellants.

The judgment appealed from is reversed, with directions to grant a new trial.

ALL CONCUR.